2026 IL App (1st) 242029-U

No. 1-24-2029

Order filed June 30, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 3693 |
| | ) | |
| LUTHER PHILLIPS, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err when it permitted defendant's impeachment with his prior convictions, and defendant did not receive the ineffective assistance of counsel. The trial court's judgment is affirmed.

¶ 2    On May 7, 2024, a jury found defendant Luther Phillips guilty of the first degree murder of Derrick Burnett and additionally found that defendant discharged a firearm that proximately caused Burnett's death. The trial court sentenced defendant to a term of 55 years in the Illinois Department of Corrections. Defendant now appeals his conviction, arguing that the trial court erred

in permitting him to be impeached with his two prior convictions, and that he did not receive the constitutionally guaranteed effective assistance of counsel.

¶ 3     For the reasons that follow, we affirm the judgment of the trial court.

¶ 4                                I. BACKGROUND

¶ 5     On March 31, 2023, the State indicted defendant with six counts of first degree murder. During pretrial proceedings, defendant filed a motion *in limine* on January 11, 2024, which sought to bar, among other things, testimony that witnesses saw defendant on prior occasions with a firearm or that witnesses knew defendant to carry a firearm.

¶ 6     The same day, defendant also filed a motion *in limine* which sought to bar the use of defendant's 2013 conviction for aggravated battery with the discharge of a firearm and 2021 conviction for felon in possession of a firearm for impeachment purposes should he choose to testify. Defendant argued that impeachment with those convictions should be disallowed because of their similarity to the charged offense, and that their admission would lead the jury to consider them as improper propensity evidence.

¶ 7     On April 11, 2024, defendant filed a motion seeking to admit evidence, pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984) ("*Lynch* evidence") of a prior act of violence committed by Burnett. Specifically, defendant sought to admit evidence that Burnett was arrested with domestic battery on June 10, 2019, and that the charges were dismissed.

¶ 8     On May 3, 2024, the trial court took up the motions *in limine* filed by the parties and said, "I reviewed the both sides [*sic*] motions and what I want to specifically—and I mean as far as the motions *in limine* outside of the issues that I'm going to address both sides state the law as to what proper arguments or proper evidence is. I'm going to expect that lawyers understand the law and

the evidence, and that if something is said or evidence is improper that will be objected to, and I will rule on that." The trial court then addressed the issue of the admissibility of defendant's prior convictions. Following argument, the trial court ruled:

> "I do find that, I appreciate [defense counsel], your argument, that it's too similar and the jurors would use it for propensity, but when a defendant testifies, his credibility is at stake, especially in a case where it's a serious case and it's a murder case and he's saying it's self defense. So his testimony, his credibility makes that an issue. And prior convictions are used for impeachment. And I understand that a prior conviction as to aggravated battery with a firearm is similar and your argument that it would be substantially prejudicial, or its prejudicial affect [*sic*] would outweigh any probative value, but I find that the probative value and the relevancy of it is that it goes as to the defendant's credibility and self-defense. So I do find that the prejudice is not weighed, not outweighed by its relevance [*sic*] as it goes to the defendant's credibility."

¶ 9    The trial court concluded, "So the prior convictions will be allowed if the defendant chooses to testify." The trial court next ruled on defendant's *Lynch* motion, concluding that the evidence of Burnett's prior arrest for domestic battery would be admissible.

¶ 10    Defendant opted for a jury trial. Marie Phillips, defendant's sister and Burnett's girlfriend, testified that she dated Burnett for seven years. On January 20, 2023, at approximately 8:30 p.m., she was at home with Burnett and three other people. Burnett was in a bedroom playing video games, while everyone else was in the kitchen.

¶ 11    Defendant arrived at some point in the evening with his partner, Tyrie Spurlock, and his cousin, Shannon James. Burnett answered the door and then went back to the bedroom. Phillips

denied having a full conversation with defendant, but while they were together in the kitchen, he lifted his shirt to show her a black gun on his hip. Phillips testified, "I told him why he keep bringing that in my house." The State then asked Phillips, "And you said something to him when you saw that gun?" and Phillips repeated, "Yeah. I told him why he keep coming in my house with that." She testified that defendant smirked in response.

¶ 12    Defendant was there for an hour before he announced that he was leaving. Phillips saw defendant leave with Spurlock through the back door, and they did not close the door behind them. When Phillips realized the door was open and went to close it, she saw defendant at the bottom of the stairs connected to her back porch. Defendant was yelling, and when Phillips asked him why he was making so much noise, he started back up the stairs saying, "they phony, they phony." Phillips did not know to who defendant was referring.

¶ 13    Burnett exited the bedroom and approached before telling defendant, "You tripping, bro. You tripping. You tripping, man. You tripping, bro." Burnett returned to the bedroom, and Phillips told defendant to make up his mind as to whether he was leaving or staying. Burnett later returned, and defendant told Burnett, "Bitch ass n***, I don't like you no way."

¶ 14    A fist fight between Burnett and defendant ensued on the porch. Phillips did not see who threw the first punch, she did not see Burnett with a gun, and she did not see defendant's gun when the fighting began. After a minute of fist fighting, defendant pushed Burnett, who fell down the porch stairs, causing the headset he was still wearing to fall off. Burnett came back up the stairs, and Phillips described defendant as being at the top of the stairs with his back to the wall. The two continued fighting with their fists for approximately ten seconds when Phillips heard a "pow" and

saw a spark. She did not see a gun at the time she heard a gunshot. Burnett walked to the porch and fell down by a grill. Defendant left with Spurlock, got into his truck, and drove away.

¶ 15    On cross-examination, Phillips stated that she began drinking vodka around the time defendant arrived, but that she had not consumed any drugs. She also reiterated that she could not see the gun when it was fired because it was dark on the porch.

¶ 16    Burnett's post-mortem examination revealed that he had a penetrating gunshot wound to the right side of his chest and that the bullet perforated the upper and lower lobes of the right lung, aorta, and one of Burnett's thoracic vertebrae. He died as a result of the gunshot wound. Burnett's bloodwork indicated that he had a blood-alcohol concentration of .123 grams per 100 milliliters, and that he had ecstasy and THC in his system.

¶ 17    Defendant was arrested in Mississippi a month after the shooting and returned to Chicago.

¶ 18    Defendant testified in his own defense. He went to Phillips's home on January 20, 2023, with his girlfriend, Spurlock. Prior to that night, defendant never had any problems with Burnett and the two had never fought. When defendant arrived, Burnett answered the door and asked defendant "why the f*** you keep banging on the door like that?" However, defendant described that as normal behavior and something that happened every time he visited.

¶ 19    When defendant decided to leave, he wanted his cousin, James, to accompany him. However, Phillips did not want James to leave, and defendant and Phillips began arguing. Burnett left the bedroom and went outside with defendant and Phillips. Burnett poked defendant in the face and told him, "Bitch ass n***, stop talking to my bitch like that." Defendant replied, "Get your bitch ass out of here." Burnett went back inside.

¶ 20    Burnett came back out of the bedroom and punched defendant in the face. The two began fighting, and defendant pushed Burnett down the stairs. Burnett ascended the stairs with a gun in his hand and the two continued fighting and struggling over the gun—a gun which defendant claimed belonged to Burnett. Defendant denied having a gun or bringing a gun to Phillips's home.

¶ 21    Defendant fought Burnett for the gun and was able to take it from Burnett. He claimed that he used it because he feared for his own life. Defendant dropped the gun on the porch and fled. Defendant admitted that he had convictions for aggravated battery with a firearm and possession of a firearm by a felon.  He denied carrying a gun since 2019. Defendant said he went to Mississippi because no one knew him there and he wanted to try to earn some money for a lawyer.

¶ 22    On cross-examination, defendant admitted that he did not call the police, and that he spent a month in Mississippi and that he did not return to Chicago on his own.

¶ 23    Defendant next recalled Phillips, who testified that on June 10, 2018, Burnett was arrested for a domestic battery that was committed against her.

¶ 24    Finally, defendant called Spurlock, who testified that she and defendant went to Phillips's home on January 20, 2023. After being there for 15 to 20 minutes, defendant received a phone call and said he was getting ready to leave. Spurlock returned to their car, got inside, and waited for defendant. From where she was parked, she could not see the back porch of Phillips's home except by looking at one of her mirrors. However, she was distracted by playing a game on her phone. While waiting, Spurlock heard Phillips scream which prompted her to look back at the house. Spurlock saw Burnett falling down the stairs, then watched him go back up to the porch. She did not see Burnett with a weapon, and she heard the gunshot, but could not see who fired the gun.

¶ 25 When defendant entered the car, he told Spurlock, "he shouldn't have put his hands on me." Spurlock drove away, but when Spurlock stopped at the end of an alley, defendant exited the car and ran away.

¶ 26 The jury found defendant guilty of first degree murder and found that defendant personally discharged a firearm that proximately caused death to another person. The trial court sentenced defendant to 55 years in prison based on his first degree murder conviction and the firearm enhancement. Defendant's motion to reconsider sentence was denied on September 24, 2024, and his notice of appeal was filed the same day. This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28 Defendant raises three contentions of error on appeal. He first argues that the trial court abused its discretion by allowing the admission of defendant's prior convictions for impeachment purposes. Second, he argues that he did not receive the effective assistance of counsel when trial counsel failed to object to testimony from Phillips that defendant brought a gun to her home on prior occasions. Lastly, defendant claims that he did not receive the effective assistance of counsel when trial counsel failed to request a jury instruction for second degree murder based on the mitigating factor of serious provocation. We address these in turn.

¶ 29                 A. The Admission of Defendant's Prior Convictions

¶ 30 For the purposes of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is admissible if (1) the crime was punishable by death or imprisonment in excess of one year or involved dishonesty or false statements regardless of the punishment; (2) the witness's conviction or release from confinement, whichever date is later, occurred less than 10 years before the date of the trial; and (3) the danger of unfair prejudice does not substantially

outweigh the probative value of the conviction. Ill. R. Evid. 609 (eff. Jan. 1, 2011); *People v. White*, 407 Ill. App. 3d 224, 233 (2011); see also *People v. Montgomery*, 47 Ill. 2d 510, 519 (1971) (adopting Federal Rule of Evidence 609). The parties only dispute whether the danger of unfair prejudice substantially outweighed the probative value of defendant's convictions.

¶ 31    We have deemed a number of factors helpful in determining whether the probative value of a prior conviction is substantially outweighed by the danger of unfair prejudice. These include: (1) whether the prior conviction is veracity related; (2) the recency of the prior conviction; (3) the witness's age and other circumstances surrounding the prior conviction; (4) the length of the witness's criminal record and his conduct subsequent to the prior conviction; (5) the similarity of the prior offense to the instant offense thus increasing the danger of prejudice; (6) the need for the witness's testimony and the likelihood he would forgo his opportunity to testify; and (7) the importance of the witness's credibility in determining the truth. *People v. Robinson*, 299 Ill. App. 3d 426, 441 (1998). The trial court need not articulate all the factors considered in its application of the balancing test. *People v. Atkinson*, 186 Ill. 2d 450, 462-63 (1999). Nor should the balancing test be applied mechanically. *White*, 407 Ill. App. 3d at 233. However, the record must include some indication that the trial court was aware of its discretion to exclude a prior conviction. *Id*.

¶ 32    More than 30 years ago, our supreme court criticized the manner in which courts were employing this test:

> "When presented with arguments that certain felonies have no direct relation to credibility, some courts employ the rationale that a felony of any type evinces a disrespect for societal order and thus adversely affects the defendant's veracity; or, stated another

way, that prior felonious conduct establishes a disposition to place self-interest ahead of the interest of society, and may suggest a willingness to do so again on the witness stand.

In our view, the increasingly mechanical application of these premises does not comport with the principles expressed in *Montgomery*, or in the authorities on which the *Montgomery* court relied in adopting Rule 609 as the rule to be applied in this State. Arguably, all criminal conduct, from the most serious felony to misdemeanors such as reckless or disorderly conduct, criminal trespass, resisting a peace officer, and numerous others evinces a disrespect for society. The *Montgomery* rule does not, however, allow for the admission of evidence of any and all prior crimes. The focus of *Montgomery* was on crimes which bear upon the defendant's truthfulness as a witness." *People v. Eddie Williams*, 161 Ill. 2d 1, 39 (1994); see also *People v. Cox*, 195 Ill. 2d 378, 384 (2001) (reiterating the same concern).

¶ 33    This analysis is critical because "it is a fundamental tenet of our criminal justice system, however, that the introduction of evidence of other crimes to show or suggest a propensity to commit crime is an improper purpose and is prohibited. This is so because such evidence tends to persuade the jury that, on the basis of his past conduct, defendant is a probable perpetrator of the crime, or to influence the jurors to convict simply because they feel he is a bad person deserving of punishment." *Eddie Williams*, 161 Ill. 2d at 40.

¶ 34    When the prior convictions are similar to or identical with the charges at trial, there are strong reasons to exclude those convictions because of the pressure on jurors to conclude that if the defendant committed the crime once before, he probably did so again. *Eddie Williams*, 161 Ill. 2d at 38 (citing *Gordon v. United States*, 383 F. 2d 936, 940 (D.C. Cir. 1967).

¶ 35     A trial court's ruling on the admissibility of other-crimes evidence will not be reversed absent an abuse of discretion. *White*, 407 Ill. App. 3d at 233. An abuse of discretion occurs where the trial court's ruling is arbitrary, fanciful, or where no reasonable person would take the view adopted by the trial court. *Id*.

¶ 36     Defendant cites to *People v. Adams*, 281 Ill. App. 3d 339 (1996), as being analogous to the instant case. In *Adams*, the defendant was charged with one count of attempt first degree murder, two counts of aggravated battery, and one count of armed violence, and at trial the State was permitted to impeach defendant with prior convictions for aggravated battery and possession of a controlled substance. *People v. Adams*, 281 Ill. App. 3d 339, 340 (1996). This court reversed, reasoning that "the probative value relating to credibility was minimal by comparison with the prejudice due to the admission of the prior aggravated battery convictions," and that the "admission of his prior convictions could have persuaded the jury that 'if he did it before, he probably did so this time.' " *Id*. at 345.

¶ 37     However, *Adams* is distinguishable from the instant case. In *Adams*, the defendant argued that his prior convictions were highly prejudicial and not probative of his credibility. *Id*. The only part of the trial court's reasoning recited by this court was the trial court's statement that, "What I believe is that these type of charges, felony convictions of this defendant are probative and really more probative than prejudicial." *Id*. The trial court's stated reasoning in *Adams* suggested that it considered the defendant's prior convictions as probative of his guilt, rather than probative of his credibility. *Id*. *Eddie Williams*, upon which *Adams* relied, similarly found that the defendant's prior convictions were improperly admitted because the trial court believed they were probative of the defendant's guilt. *Eddie Williams*, 161 Ill. 2d at 40; *Adams*, 281 Ill. App. 3d at 344-45.

¶ 38    In this case, the trial court made no such statements to indicate that it was admitting defendant's prior convictions because they were probative of his guilt. In contrast to *Adams*, the State directs us to two additional supreme court decisions that are instructive.

¶ 39    The first, *People v. Redd*, concerned a defendant, charged with criminal sexual assault and first degree murder, who was impeached with his prior convictions for criminal sexual assault and attempt first degree murder. *People v. Redd*, 125 Ill. 2d 252, 260, 324 (1990). There, the supreme court observed that "the record does not indicate that the circuit court performed the balancing test required by *Montgomery*." *Id*. at 325. However, the court noted that the State had argued to the trial court that, "the discretion you are given under *Montgomery* in order to know whether or not that defendant's conviction for the similar offense is also an aid in determining credibility and will not be reversed if in granting our motion using your discretion you allow us to use a similar offense." *Id*. at 326. The court thus concluded that "from the record, it appears the trial court understood its discretion under *Montgomery*, and properly denied defendant's motion." *Id*.

¶ 40    The second case, *People v. Frank Williams*, concerned a defendant charged with first degree murder, attempt first degree murder, and aggravated battery with a firearm and who was impeached with his prior conviction for aggravated battery. *People v. Frank Williams*, 173 Ill. 2d 48, 54, 80 (1996). The court reaffirmed that *Montgomery* and *Eddie Williams* continued to be the law, and described the *Montgomery* test as "critical." *Id*. at 83. However, the court found no error in the admission of the defendant's prior conviction, reasoning that, "[a] review of the transcript shows that the judge was fully aware of the *Montgomery* standard and the balancing test it requires, and that "[i]n similar circumstances, this court has declined to find error when the transcript makes clear that the trial judge was applying the *Montgomery* standard, even though the judge did not

expressly articulate it." *Id.* (citing *Redd*, 135 Ill. 2d at 325-26). See also *People v. Mullins*, 242 Ill. 2d 1, 18 (2011) (citing *Redd* and *Frank Williams* with approval).

¶ 41     Here, there was a risk that the jury would use defendant's prior convictions for aggravated battery with a firearm and possession of a firearm by a felon as propensity evidence to conclude that defendant was guilty because he had committed his past offenses. And there was no discussion in the record as to precisely *how* defendant's prior convictions weigh on his truthfulness, nor any discussion of most of the factors we identified above. However, in line with *Redd* and *Frank Williams*, the record clearly indicates that the trial court understood the balancing test it was required to perform, weighing the risk of unfair prejudice against the probative value defendant's prior convictions would have regarding his credibility. *Redd*, 125 Ill. 2d at 326; *Frank Williams*, 173 Ill. 2d at 83.

¶ 42     The trial court acknowledged the possibility that defendant might be prejudiced by his prior convictions before concluding that prior convictions "are used for impeachment," that defendant's credibility was at issue in a self-defense case, and "that the probative value and the relevancy of it is that it goes as to the defendant's credibility and self-defense." The jury in this case was presented with two competing versions of who brought a gun to Phillips's home that night, and it was tasked with deciding whether it believed defendant's testimony that Burnett was the initial aggressor and that defendant feared for his life. Under the circumstances, the trial court's decision to allow defendant's impeachment with his prior convictions was a proper exercise of its discretion and its decision was not arbitrary, fanciful, or one that no reasonable person would make. *White*, 407 Ill. App. 3d at 233.

¶ 43 Accordingly, reviewing this issue for an abuse of discretion, we hold that the trial court did not err in permitting defendant's prior convictions to be admitted for the limited purpose of impeachment.

¶ 44                                   B. Ineffective Assistance of Counsel

¶ 45 Defendant next argues that he received ineffective assistance of counsel because trial counsel failed to object to testimony about defendant possessing a gun on prior occasions and failed to request an instruction for second degree murder based on serious provocation.

¶ 46 Criminal defendants are guaranteed the right to the effective assistance of counsel. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. 1, § 8; *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To sustain a claim of ineffective assistance of counsel, one must show both that trial counsel's performance was deficient, measuring it against an objective standard of competence under prevailing professional norms, and that but for counsel's deficient performance, there was a reasonable probability that the outcome of the case would have been different. *Strickland*, 466 U.S. at 687, 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id*. at 686. However, judicial scrutiny of counsel's performance must be highly deferential. *Id*. Courts indulge in a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance, and a defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id*. at 689.

¶ 47    We review ineffective assistance of counsel claims using a bifurcated standard of review. *People v. Ortega*, 2020 IL App (1st) 162516, ¶ 24. We defer to any factual findings made by the trial court unless they are against the manifest weight of the evidence. *Id.* However, the ultimate legal question of whether counsel provided effective assistance is reviewed *de novo*. *Id.*

¶ 48                    1. Testimony of Prior Bad Acts

¶ 49    First, we address defendant's contention that trial counsel provided ineffective assistance by failing to object to Phillips's testimony that suggested defendant brought a gun to Phillips's home on prior occasions.

¶ 50    In analyzing this issue, we need not determine if trial counsel's performance was deficient if this issue can be disposed of on the ground that defendant was not prejudiced. *People v. Eddmonds*, 143 Ill. 2d 501, 512 (1991). The evidence at trial indicates that defendant did not have a reasonable probability of obtaining a different outcome if the trial court had sustained an objection to this testimony.

¶ 51    Defendant's credibility was already damaged on the basis of his prior convictions when compared to Phillips, who testified that defendant possessed a gun that night and that Burnett did not have a gun. Defendant also fled across multiple state lines to Mississippi and did not return until he was arrested, which was indicative of consciousness of guilt. *People v. Moore*, 2015 IL App (1st) 140051, ¶ 26 (evidence of flight is admissible to demonstrate consciousness of guilt).

¶ 52    Additionally, it is undisputed that Burnett was in the bedroom playing video games for most of the time that defendant was at the gathering and that he still had his headset on when he left the bedroom. Additionally, Spurlock testified that she saw Burnett fall down the stairs and that she did not see any kind of weapon in his hand. These facts make it even more unlikely that the

jury would have concluded that Burnett possessed a gun on his person, even without Phillips's testimony about defendant bringing a gun on previous occasions.

¶ 53　In assessing prejudice, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *People v. Johnson*, 2021 IL 126291, ¶ 56. The question is whether it is reasonably likely the result would have been different. *Id*. In this case, there was still considerable evidence upon which the jury could have based its guilty verdict even if trial counsel had prevented the admission of the statements in question. There was not a reasonable probability of a different outcome if trial counsel had objected.

¶ 54　Accordingly, trial counsel did not provide ineffective assistance of counsel in this regard.

¶ 55　　　　　　　　　　　2. Second Degree Murder Instruction

¶ 56　In Illinois, second degree murder is considered a lesser-mitigated offense of first degree murder. *People v. Neasom*, 2017 IL App (1st) 143875, ¶ 39. One form of second degree murder can arise when the decedent is killed in the presence of an intense passion resulting from serious provocation by the victim. *Neasom*, 2017 IL App (1st) 143875, ¶ 40; 720 ILCS 5/9-2(a)(1) (West 2024). Serious provocation may arise from substantial physical injury or substantial physical assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. *Neasom*, 2017 IL App (1st) 143875, ¶ 40.

¶ 57　We need not reach the question of whether defendant was entitled to a second degree murder instruction because he cannot overcome the presumption that choosing not to request the instruction was sound trial strategy. It is well settled in Illinois that counsel's choice of jury

instructions, and the decision to rely on one theory of defense to the exclusion of others, is a matter of trial strategy. *People v. Sims*, 374 Ill. App. 3d 231, 267 (2007).

¶ 58 Defendant testified at trial that Burnett was the initial aggressor and that he shot Burnett because he feared for his life. The jury was subsequently instructed on the use of force in self-defense, as well as second degree murder based on unreasonable or imperfect self-defense. Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (2024); Illinois Pattern Jury Instructions, Criminal, No. 7.05 (2024). Even if defendant would have been entitled to a second degree murder instruction based on serious provocation, the decision to rely on self-defense to the exclusion of second degree murder based on serious provocation was a matter of sound trial strategy.

¶ 59 Defendant elected to pursue a theory that he acted in self-defense or, alternatively, that he acted in self-defense but his belief that deadly force was necessary was unreasonable. Trial counsel could have been concerned that putting forth yet another alternative theory of defense, one which was inconsistent with defendant's testimony that he feared for his life and acted in self-defense, would make either of defendant's self-defense theories less credible.

¶ 60 Defendant cannot overcome the presumption that this choice was the result of sound trial strategy. Accordingly, trial counsel did not provide ineffective assistance of counsel by declining to request a second degree murder instruction on the basis of serious provocation.

¶ 61                                   III. CONCLUSION

¶ 62 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 63 Affirmed.